## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| WILEY L. DAY, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 5:06-CV-876-IPJ |
| ) | |
| LYNK SYSTEMS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Pending before the court is the summary judgment motion filed by the defendant, Lynk Systems ("Lynk") (doc. 21) filed with a supporting brief (doc. 21) and evidentiary materials (doc. 22). Plaintiff, Wiley L. Day, Sr., filed a response in opposition to Lynk's motion for summary judgment and supporting evidentiary materials (doc. 26) to which Lynk filed a reply (doc. 27).

## FACTUAL BACKGROUND

Day, a black male, is employed by Lynk, a single-source provider of electronic payment processing services. Comp. at ¶ 3; Boone Decl. at ¶ 2. Day was hired by Lynk on June 26, 1998, as an Account Executive, an entry level position in Lynk's sales department. Day Dep. at 39-40; Def's. Ex. 2. Although Day was hired in the entry level position, during his interview he informed Lynk that he was interested in a management position. Day Dep. at 40-41.

As an account executive, Day was responsible for presenting the benefits of Lynk's services and products to potential customers in a specific territory, signing-up

1

new clients, and making contracts with merchants. Boone Decl. at ¶ 7; Def.'s Ex. 4. Day was compensated strictly on commissions, Day Dep. at 54, and he was assigned to a specific tier level based upon the number of new merchants that he signed-up each month. Boone Decl. at ¶ 8. Lynk's tier level system is organized as follows: account executives that sign-up less than 11 merchants in a month are assigned to tier IV; account executives that sign-up 11 to 16 merchants each month are assigned to tier III; account executives that sign-up 17 to 21 merchants each month are assigned to tier II; and account executives who sign-up 22 or more merchants are assigned to tier I. Boone Decl. at ¶ 9; Def.'s Ex. 6. Account executives are expected to secure seven (7) deals each month or generate monthly volume points of at least one-thousand dollars ($1,000.00) in a rolling 90 day period. Day Dep. at 143; Def.'s Ex. 7; Boone Decl. at ¶ 10. On November 2, 2004, Jody Mediamolle, a Lynk manager, sent Day an email reminding him that in order to stay on the Lynk sales team, he should always meet the sales expectations of an account executive (7 deals and/or $1,000.00 volume every month without fail). Def.'s Ex. 7.

In August 2004 Lynk hired Tim Boone as a regional director of sales. Boone Decl. at ¶ 2. As the regional director of sales, Boone was responsible for managing all of the sales managers and their teams in the southeast region. *Id.* In November 2004, the position of sales manager for the State of Alabama became available and Boone was responsible for filling the position. *Id.* ¶¶ 11-12. At that time, a sales manager was responsible for overseeing all account executives and territory managers in the State of Alabama. *Id.* at ¶ 11. Boone considered three existing Lynk

employees for the position--Wendell Jones, Nathan Roulston, and Day. *Id*. at ¶ 13.

In considering Jones, Roulston, and Day for the sales manager position, Boone analyzed the qualifications of the three candidates, and he focused primarily on their sales performance. *Id.* at ¶ 14. After reviewing the sales performance of the three candidates, Boone realized that Day's sales performance was significantly lower than Roulston's and Jones's sales performance. *Id.* at ¶ 15. Day's monthly average merchant count from April 2004 to November 2004 was 6.625, below the required standard of 7 deals, and his average monthly volume points during that time was $410.34, well below the required standard of $1000.00. Boone Decl. at ¶ 16; Ex. 1 to Boone Decl. In the eight months preceding the promotional opportunity, Day performed at tier IV during six of the eight months and during the other two months he performed at tier III. Boone Decl. at ¶ 17. Roulston's monthly average merchant count from April 2004 to November 2004 was 14.93 and his average monthly volume points during that time was $4,459.00. *Id*. at ¶ 19. Jones's monthly average merchant count from April 2004 to November 2004 was 10.69 and his average monthly volume points during that time was $1,527.53. *Id.* at ¶ 20.

Boone was looking for a candidate with strong sales performance, and, after reviewing the sale's numbers, Boone did not feel that Day was qualified for the sales manager position. *Id*. at 18. After comparing Day's sales performance record with the other two candidates who were performing at a higher level, Boone did not consider Day further for the position. *Id.* at 21. Boone ultimately chose Jones for the position because of his solid sales performance and because he was centrally located

within the sales region. *Id*. at ¶ 23. Day does not dispute that Boone was the person responsible for filling the sales manager position. However, in his deposition, he testified that he believed that Mediamolle made a recommendation to Boone that he should promote Jones to the sales manager position. Day Dep. at 99.

On March 2, 2005, Day filed a charge of discrimination with the Equal Employment Opportunity Commission. Day Dep. at 152; Def.'s Ex. 5; Compl. at ¶ 2. Day sued Lynk alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and in violation of 42 U.S.C. § 1981a.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the

pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(e)). In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). That party must demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 587. A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## ANALYSIS

Title VII of the Civil Rights Act ("Title VII") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. Day alleges that he was discriminated against on the basis of race when Lynk did not promote him to the sales manager position that became available in November 2004. Because there is no direct evidence of race discrimination in this case, Day has the initial burden of establishing a prima facie case of race discrimination. *Combs v. Plantation Patterns*,

106 F.3d 1519, 1527-28 (11th Cir. 1997). If the plaintiff is able to establish a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory explanation for its decision. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981). If the defendant articulates a legitimate, non-discriminatory explanation for its decision, then burden of production shifts back to the plaintiff to show that defendant's proffered reason was not the true reason for the employment decision and that race was. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 2747 (1993).

Assuming that Day is able to establish a prima facie case of discrimination, the court finds that Lynk has articulated a legitimate, non-discriminatory reason for not promoting Day to the sales manager position. Specifically, the evidence demonstrates that Day had a weaker sales performance than the other two candidates and that Boone wanted to promote someone with a strong sales performance in the sales manager position.

Because Lynk has established a legitimate, nondiscriminatory reason for the decision to promote Jones, rather than Day, to the sales manager position, the plaintiff has the burden of production to show that Lynk's proffered reason was not the true reason for the employment decision, and that race was the real reason. A reason is not pretext for discrimination "'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. County Com'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515. In the context of a discrimination claim arising out of a failure to

promote:

> a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the officer who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer."

*Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000) (quoting *Combs*, 106 F.3d at 1543). When a plaintiff tries to establish pretext based on disparities in qualifications, the plaintiff must show that the disparities were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Brooks*, 446 F.3d at 1163.

Day argues that he was more qualified than Jones for the sales manager position. Day testified that he believes he is more qualified than Jones because Jones did not have "comprehensive sales experience" and he did not have experience in the "level of management where he was managing people or where he had put together sophisticated comprehensive marketing plans and strategies and business plans relative to marketing." Day Dep. at 139-140. However, Day cannot prove pretext by "simply arguing" that he was more qualified than Jones. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (holding that a plaintiff cannot meet the burden of showing that proffered reasons was pretext "by simply quarreling with the wisdom of that reason."). Day has not produced evidence to demonstrate that the disparities between he and Jones were of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Jones] over [Day]

7

for the job in question." *Brooks*, 446 F.3d at 1163. The court finds that Day's belief that he was more qualified than Jones for the sales manager position is insufficient to prove pretext. Further, Day has not offered any evidence to demonstrate that the reasons given for not promoting him to the sales manager position were false. In fact, Day admits that in 2004 Jones had a better average merchant count and a better monthly volume points average than he. Day Dep. at 140-141.

In his brief, Day argues that Lynk's failure to post or advertise for the position and allow candidates to apply for the position shows that Lynk was "pre-selecting" white candidates. However, none of the candidates that were considered--Day, Roulston, or Jones--were allowed to apply for the position, and the plaintiff admits that none of the other candidates were allowed to apply. Therefore, there is no evidence to show that the failure to advertise that the job was available favored candidates of one race over another. Day also argues that Lynk was "pre-selecting" white candidates by arbitrarily choosing to examine Day's sales performance during the months of April 2004 to November 2004 in order "to present a less desirable outcome for the plaintiff." However, it is undisputed that Lynk also only considered the months of April 2004 to November 2004 with respect to the other two candidates that were considered for the position. Further, Day admits that, even when considering the time period from January 2004 to November 2004, Jones still had a higher merchant count average than he. Pl.'s Br. in Opp'n to Def.'s Mot for Summ. J. at p. 10.

## **CONCLUSION**

Day having failed to establish that Lynk's legitimate non-discriminatory reasons for not promoting Day to the sales manager position was pretext for a discriminatory reason, the court finds that summary judgment is due to be granted in favor of Lynk.

**DONE** and **ORDERE**D this the 2nd day of April 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE